UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-80034-CR-Marra/Matthewman

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ERIC LENARD WILLIAMS, JERRICK
DAVID BARTEE, ANTONIO BEVERLY,
FRANK DAVIS MOORE, JR.,

    Defendants.
_____/



REPORT AND RECOMMENDATION

THIS CAUSE is before the Court upon the Defendants Williams' and Bartee's Motion to Suppress Wiretap Evidence [DE 708]; Defendant Antonio Beverly's Motion to Adopt Co-Defendants, Eric Williams' and Jerrick Bartee's, Motion to Suppress Wiretap Evidence [DE 719]; Defendant Bartee's Motion to Suppress Intercepted Wire Communications, Its Derivative, and Request for *Franks* Hearing [DE 721]; Defendant Frank Moore's Motion to Suppress Wiretap Evidence [DE 722]; Defendant Williams' Motion to Adopt Co-Defendants' Motions [DE 723]; Defendant, Antonio Beverly's, Motion to Adopt Co-Defendant, Frank Moore's, Motion to Suppress Wiretap Evidence [DE 725]; and Defendant, Antonio Beverly's Motion to Adopt Co-Defendant, Jerrick Bartee's, Motion to Suppress Intercepted Wire Communications, Its Derivative, and Request for *Franks* Hearing [DE 727]. The motions were referred to the undersigned by District Judge Kenneth A. Marra. *See* DE 748. The Government has responded [DE 751]. This matter is ripe for review.

1

BACKGROUND

On February 7, 2013, Defendant Frank Davis Moore, Jr., was charged by way of Indictment with conspiracy to possess with intent to distribute 280 grams or more of a mixture and substance containing a detectable amount of cocaine base in violation of Title 21, United States Code, Section 846 (Count 1). *See* DE 8. Defendant Eric Williams was charged by way of Indictment with conspiracy to possess with intent to distribute 280 grams or more of a mixture and substance containing a detectable amount of cocaine base in violation of Title 21, United States Code, Section 846 (Count 1), and with possession with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base in violation of Title 21, United States Code, Section 841(a)(1) and Title 18 United States Code, Section 2 (Count 4). *Id.* Defendant Jerrick David Bartee was charged by way of Indictment with conspiracy to possess with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine hydrochloride in violation of Title 21, United States Code, Section 846 (Count 7), possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine hydrochloride in violation of Title 21, United States Code, Section 841(a)(1) and Title 18 United States Code, Section 2 (Counts 8, 10), and attempted possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine hydrochloride in violation of Title 21, United States Code, Section 841(a)(1) and Title 18 United States Code, Section 2 (Count 9).

The Government's evidence in this case includes information derived from a wiretap authorized by an Order issued by United States District Judge Donald M. Middlebrooks on May 29, 2012 [DE 751]. The wiretap order authorized the interception of conversations to and from

the target cell phone used by suspected drug trafficker co-defendant George Bivins. *Id.*[1] The Government's wiretap application was supported by an affidavit prepared by Charles Ferry, an FBI task force officer. *Id.*

The very lengthy and thorough affidavit supporting the initial wiretap application states that Task Force Officer Ferry had probable cause to believe that several target subjects--including five co-defendants, had committed, were committing, and were going to commit--the target offenses of distributing narcotic controlled substances, using communications facilities in the commission of narcotics offenses, and attempting and conspiring to commit the aforementioned crimes. The affidavit went into great detail regarding the state of the investigation, the use of four confidential informants and the information that they had gathered for law enforcement.

THE PARTIES' CONTENTIONS

<u>Defendants Williams' and Bartee's Motion to Suppress Wiretap Evidence [DE 708]</u>

Defendants Williams and Bartee seek to suppress all wiretap evidence based on all six wiretap orders. They first argue that they are aggrieved persons with standing to challenge the wiretaps. Next, Defendants Williams and Bartee assert that the Government "elected to seek wiretap authorization without fully exhausting all other investigative techniques." They accuse the Government of relying on conclusory statements and opinions in the affidavit attached to the May 29, 2012 wiretap application. They also call attention to paragraph 9 of that affidavit, in which Task Force Officer Ferry admitted that he had not included each and every fact known to

---

[1] Defendants' pending motions concern the May 29, 2012 application, affidavit, and order. As noted by the Government, there were subsequent orders authorizing the continued interception of target phone 1, as well as the interception of target phones 2-5, which belonged to co-defendant George Bivins, co-defendant Antonio Beverly, and co-defendant Daniel Torrez.   [DE 751].

him concerning the investigation, but rather set forth only the facts that he believed were necessary to establish the foundation for a wiretap order.

Defendants Williams and Bartee argue that Task Force Officer Ferry should have considered the possibility of confidential source 1 ("CS1") exploring "a deeper undercover involvement with [co-defendant George] Bivins than law enforcement chose to exploit . . . ." They contend that Task Force Officer Ferry should have included additional information in the affidavit regarding other contacts and other communications between CS1 and co-Defendant Bivins. They argue that "the conclusory averments of the affidavit about CS1's inability to identify all members of the conspiracy prevented the Court from acting as a truly impartial arbiter in determining the necessity of a wiretap to further the investigation." Defendants Williams and Bartee take issue with the statement in the affidavit that an undercover agent could not be introduced to Bivins successfully, arguing that the statement was boilerplate and did not assist the judge in reaching an independent conclusion regarding the necessity of a wiretap. They claim that the Government did not sufficiently explain in the affidavit why more traditional investigative techniques, such as pen registers, trap and trace records, surveillance, a pole camera, and telephone toll records, could not have been utilized instead of a wiretap. Defendants Williams and Bartee request a *Franks* hearing on the basis that the Government failed to meet its burden of showing necessity, and, in the alternative, on the basis that Task Force Officer Ferry's affidavit contained "willful and/or reckless omissions of fact."

<u>Defendant Bartee's Motion to Suppress Intercepted Wire Communications, Its Derivative, and Request for Franks Hearing [DE 721]</u>

Defendant Bartee filed this second motion as a supplement to his prior motion to suppress. He argues that Task Force Officer Ferry, in his affidavit attached to the wiretap

application, "intentionally or with reckless disregard for the truth omitted and under-represented material information about the background and purported role of the confidential source (CS1), necessary to any finding of probable cause and necessity." Defendant Bartee believes that he knows the identity of CS1, and he explains that information obtained from that individual was used in the original application for wiretap and then used to support the August 29, 2012 wiretap application that yielded intercepted communications of Defendant Bartee. Defendant Bartee argues that, if Task Force Officer Ferry had not misrepresented and omitted information regarding CS1 in the affidavit, including information about CS1's background, credibility, reliability, and purported conduct in this case, the order authorizing wiretaps would not have been granted. Defendant Bartee emphasizes that the judge was never made aware of CS1's full criminal history and the fact that he had been incarcerated on 13 felony convictions and had been convicted of 25 felonies in total. Defendant Bartee believes he is entitled to a *Franks* hearing because he has made a "substantial showing that supports a finding of intent or recklessness" by Task Force Officer Ferry.

<u>Defendant Moore's Motion to Suppress Wiretap Evidence [DE 722]</u>

Defendant Moore challenges all six of the wiretap orders in this case. He makes a virtually identical argument to that made by Defendants Williams and Bartee in their motion to suppress [DE 708].

<u>The Government's Response [DE 751]</u>

The Government argues that Defendants have only offered "scant and baseless assertions" and are not entitled to a *Franks* hearing as to their argument that there was no necessity for the wiretap or as to their argument that the affidavit underlying the application for the first wiretap contained statements that were deliberately false or constituted a reckless

disregard for the truth. The Government contends that, while law enforcement had already conducted a great deal of investigative work prior to the application for the wiretap, the Government still lacked, prior to the wiretap, sufficient evidence to convict all individuals engaging in the criminal drug-related activity and to identify unknown persons who were believed to be engaging in criminal activity with the persons named in the wiretap application. The Government asserts that it was simply required to explain in the affidavit the retroactive or prospective failure of several reasonable investigative techniques. It explains that wiretaps are particularly appropriate in a case, like this one, where the telephone is regularly used to conduct the criminal enterprise. The Government argues that this Court's review is "limited to determining whether the facts set forth in the government's application are minimally adequate to support the findings made by the issuing judge." It also points out that the Eleventh Circuit has consistently held that, if conventional techniques cannot show the entire scope of a conspiracy, a wiretap is appropriate even when conventional techniques could result in the arrest and conviction of some of the members of said conspiracy. The Government believes that the two District Judges reasonably exercised their discretion in authorizing the wiretaps and that the initial affidavit established the requisite showing of necessity for a wiretap order. It argues that Task Force Officer Ferry's affidavit did not contain boilerplate language, but rather contained specific details about the ongoing criminal investigation and the need for a wiretap. The Government emphasizes that Defendants have inappropriately speculated in their motions as to whether other investigative techniques would have been sufficient with the benefit of hindsight.

With regard to Defendants' second argument, the Government contends that Defendants' allegations about Task Force Officer Ferry making false, misleading, and/or incomplete statements are fallacious and that Defendants have failed to meet their burden sufficiently to

warrant an evidentiary hearing pursuant to *Franks*. The Government argues that Defendants have made a conclusory attack without an offer of proof. They also contend that Defendants have not shown that the judges who granted the wiretap orders would have still done so even if Task Force Agent Ferry had included every single fact about CS1's criminal history in the affidavit. Therefore, the Government does not believe that a *Franks* hearing is appropriate.

## DISCUSSION

It is undisputed that Defendants[2] have standing to move to suppress the wiretap evidence. The issue before the Court is whether the wiretap evidence should be suppressed for lack of probable cause due to alleged intentional or reckless omissions in the wiretap affidavit and/or lack of necessity for a Title III wiretap.

**I.     Basic Premises Established by *Franks***

The Eleventh Circuit applies the analysis contained in *Franks v. Delaware*, 438 U.S. 154 (1978), in evaluating an affidavit offered in support of a wiretap application. *U.S. v. Novaton*, 271 F. 3d 968, 986 (11th Cir. 2001). To be entitled to an evidentiary hearing, a challenging party must make a "substantial preliminary showing" that "(1) the affiant deliberately or recklessly included a false statement, or failed to include material information, in the warrant affidavit; and (2) the allegedly false statement or omission was necessary to the finding of probable cause." *U.S. v. Gray*, -- Fed. App. --, 2013 WL 6038485, *7 (11th Cir. 2013) (citing *Franks*, 438 U.S. at 155-56). As explained by the Eleventh Circuit,

---

[2] The term "Defendants" will be used throughout the Report and Recommendation to encompass all of the defendants moving for suppression of the wiretap evidence, that is, Defendants Eric Williams, Frank Davis Moore, Jr., and Jerrick David Bartee.

> [T]he substantiality requirement is not lightly met: To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*U.S. v. Arbolaez*, 450 F. 3d 1283, 1294 (11th Cir. 2006) (citations omitted). In fact, there is "a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. "[E]ven intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Madiwale v. Savaiko*, 117 F. 3d 1321, 1327 (11th Cir. 1997).

## II.    Defendants' *Franks* Challenge to Probable Cause

Before authorizing a Title III wiretap, a judge must determine that "there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense . . . [and] there is probable cause for belief that particular communications concerning that offense will be obtained through interception." 18 U.S.C. § 2518(3)(a)-(b). An application for wiretap authorization must be supported by probable cause and must contain "a full and complete statement of facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being or is about to be committed . . . ." 18 U.S.C. § 2518(1)(b). The judge issuing the wiretap order is required to make make a "practical, common-sense decision" concerning whether the "totality of the circumstances" demonstrates that probable cause exists that the sought-for evidence will be obtained. *U.S. v. Nixon*, 918 F. 2d 895, 900 (11th Cir. 1990). The "practical nature of the [judge]'s decision justifies great deference upon review and calls for

8

upholding the [judge]'s findings even in marginal or doubtful cases." *Id.* (internal citations omitted).

Defendants Bartee and Williams[3] contend that Task Force Officer Ferry, in his affidavit, "intentionally or with reckless disregard for the truth omitted and under-represented material information about the background and purported role of the confidential source (CS1), necessary to any finding of probable cause and necessity." Defendants Bartee and Williams argue that, if Task Force Officer Ferry had not misrepresented and omitted information regarding CS1, including CS1's full criminal history and all of his felony convictions and incarcerations, the orders authorizing wiretaps would not have been granted.

Defendants Bartee and Williams have failed to offer any proof, such as an affidavit or other sworn statement alleging that Task Force Officer Ferry deliberately or recklessly included false statements or material omissions in the affidavit. Such proof is required in order to make a substantial preliminary showing for entitlement to a *Franks* hearing. *See U.S. v. Arbolaez*, 450 F. 3d 1283, 1294 (11th Cir. 2006) ("Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."). Defendants Bartee and Williams have simply provided some information about the criminal history of an individual who they think might be CS1. The Court notes that it has already denied a motion to compel disclosure of the confidential informants, so Defendants Bartee's and Williams' entire position is based upon conjecture. The Court finds Defendants Bartee's and Williams' argument legally insufficient to merit a *Franks* hearing.

---

[3] As Defendant Williams has moved to adopt Defendant Bartee's arguments, the Court will group them together in this section of the Report and Recommendation.

Defendants Bartee and Williams offer no proof, and the Court finds no reason to believe, that Task Force Officer Ferry intentionally omitted information about CS1's criminal history and history of incarcerations in the affidavit for any nefarious purpose. The affidavit states that CS1 has been a confidential informant for the Lake Worth Police Department since 2004, has no outstanding charges, is being paid for his services as a confidential source, and bought crack cocaine from George and Lavaris Bivins prior to the inception of the investigation and during the investigation. Ferry Aff. ¶12. The affidavit further states that "CS1 has an extensive criminal history which includes felony convictions for burglary, felony trespassing, grand larceny, vehicle theft, cocaine possession, sale of cocaine, driving while license suspended by a habitual offender, and sale of cocaine within 1000 feet of a church." *Id.* The affidavit also lists several of CS1's arrests, including those for "failing to appear, resisting arrest without violence, petty larceny, possession of marijuana with intent to sell, tampering/destroying evidence, possession of marijuana under 20 grams, sale of substance in lieu of cocaine, violation of probation, and operating a motor vehicle without a license." *Id.*

It is important to note that Task Force Officer Ferry never explicitly stated in the affidavit that the listed convictions and arrests were all-inclusive. He made a concerted effort to provide the judge with details about CS1's criminal history and he correctly called CS1's criminal history "extensive." The fact that he possibly did not include every single one of CS1's felony convictions and periods of incarceration does not mean that he intentionally or recklessly omitted any information about CS1. Even if more specific information could have been provided by Officer Ferry as claimed by Defendants, that additional information would have added nothing material to the affidavit. The District Judge was advised that CS1's criminal history was extensive, and was further advised of many of the particulars of that criminal history.

Having reviewed the affidavit and Defendants Bartee's and Williams' allegations about Task Force Officer Ferry intentionally or recklessly omitting information about CS1 in said affidavit, the Court must next consider the second prong of *Franks*, which pertains to materiality. Defendants Bartee and Williams must show not only that Task Force Officer Ferry deliberately or recklessly made false statements or material omissions, but also that probable cause would be lacking in the affidavit even if the complete list of CS1's criminal history and incarcerations had been included. As explained above, the Court finds that Defendants Bartee and Williams have not provided support for their claims that Task Force Officer Ferry deliberately or recklessly made any false or misleading statements or material omissions in his affidavit. The presumption that Task Force Officer Ferry's affidavit is valid has not been overcome by Defendants Bartee and Williams. Moreover, even if Defendants Bartee and Williams had successfully proven that the portion of the affidavit regarding CS1's criminal history was false or misleading or contained important omissions, the affidavit's remaining substantive content still establishes probable cause for issuance of the initial wiretap order.

The Court finds that Defendants Bartee and Williams have not made a substantial preliminary showing that Task Force Officer Ferry deliberately or recklessly included false or misleading statements in his affidavit. Defendants Bartee's and Williams' allegations that Task Force Officer Ferry intentionally or recklessly omitted information about CS1 in the affidavit are conclusory and unsupported by an adequate offer of proof. Furthermore, the Court finds that even if the affidavit had contained every single detail about CS1's criminal history, there still exists probable cause to support the issuance of the wiretap order. Thus, Defendants Bartee and Williams are not entitled to an evidentiary hearing on this issue. *See Franks*, 438 U.S. at 172 ("if, when material that is the subject of the alleged falsity or reckless disregard is set to one side,

11

there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."). Additionally, Defendants Bartee's and Williams' *Franks*-based challenge to the issuing court's finding of probable cause is not a valid basis for suppression.

### III. Defendants' *Franks* Challenge to Necessity

The Court next addresses Defendants' *Franks*-based challenge to necessity. Before authorizing a wiretap under Title III, a court must determine on the basis of the facts submitted by the applicant that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). This necessity requirement ensures that electronic surveillance is not "routinely employed as the initial step in criminal investigation" as the "applicant must state and the court must find that normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." *U.S. v. Giordano*, 416 U.S. 505, 515 (1974). Additionally, the necessity requirement assures that "wiretapping is not resorted to in situations where traditional techniques would suffice to expose the crime." *U.S. v. Kahn*, 415 U.S. 143, 153 n.12 (1974).

On the other hand, a "comprehensive exhaustion of all possible investigative techniques is not necessary before applying for a wiretap." *U.S. v. De La Cruz Suarez*, 601 F. 3d 1202, 1214 (11th Cir. 2010) (citing *U.S. v. Alonso*, 740 F. 2d 862, 868 (11th Cir. 1984)). The federal wiretap statute was not intended to "foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." *Alonso*, 740 F. 2d at 868. "The affidavit must be read in a practical and common sense fashion . . . and the district court is clothed with broad discretion in its consideration of the application." *Id.*

Courts "will not invalidate a wiretap order simply because defense lawyers are able to suggest post factum some investigative technique that might have been used and was not." *U.S. v. Hyde*, 574 F. 2d 856, 867 (11th Cir. 1978).

Defendants argue that Task Force Officer Ferry used mere boilerplate language to explain the need for a wiretap and also argue that several other investigative techniques could have been successfully employed instead of a wiretap. The Defendants make a valiant effort to challenge the allegations of necessity and argue that Officer Ferry's assertion of necessity was lacking. In reality, however, Task Force Officer Ferry dedicated a whole section of the affidavit to the necessity issue. Ferry Aff. ¶¶34-50. He went into great detail about the investigative techniques already utilized by law enforcement, including use of confidential sources, use of pen register and telephone toll records, use of physical surveillance, and use of a pole camera, and how those techniques had only had limited success. *Id.* He also explained in depth why search warrants, additional use of physical surveillance, use of a grand jury, and use of a trash search would not be effective in this particular investigation or would be too dangerous. *Id.* Task Force Officer Ferry explained that a wiretap "is the only investigative technique which has a reasonable likelihood of revealing and securing admissible evidence needed to establish the full scope and nature of the offenses being investigated." *Id.* at ¶35. He further asserted that the wiretap would aid law enforcement in "determining the identity of all the members of the organization, the transportation routes, locations used to conceal ill-gotten proceeds, and the assets derived from money laundering." *Id.* He explained that the goal of the investigation was to remove the entire drug conspiracy or else the supply and demand of the cocaine supply in the community would be unaffected. *Id.* at ¶37.

Task Force Officer Ferry explained that law enforcement had not been able to place a

13

GPS tracker on Defendant Bivins' vehicle because Bivins' residences had so much foot and vehicle traffic and because Bivins drove five different vehicles. Ferry Aff. ¶36. He went through each of the confidential sources and explained why their contributions to the investigation were limited. *Id.* at ¶38. For example, CS1 could not provide specific information about the source of the cocaine, the manner in which Bivins received it and/or laundered the proceeds, or the purchasers of the cocaine. *Id.* According to Task Force Officer Ferry, none of the confidential sources were capable of introducing Bivins to an undercover agent. *Id.*

Task Force Officer Ferry explained that the pen register and telephone toll records did not identify individuals making and receiving phone calls from the target telephone and that the records did not reveal the content of any conversations. Ferry Aff. ¶39. He attested that the execution of search warrants would be dangerous, could lead to the destruction of evidence, would put co-conspirators on notice of the investigation, and "would not provide sufficient evidence necessary to determine the full scope of the criminal conspiracy, the identity of all the co-conspirators and the various methods used to run this criminal organization." *Id.* at ¶40. He explained that law enforcement had already carried out periodic physical surveillance of Bivins' distribution house and had carried out mobile surveillance on Bivins. *Id.* at ¶41. Task Force Officer Ferry stated, however, that it was almost impossible to conduct surveillance of the distribution house without being identified and that surveillance of Bivins' residence was inadvisable because the investigation would be jeopardized. *Id.* He also asserted that Bivins was very cautious and constantly on the look-out for mobile surveillance, which made it difficult to conduct successfully. *Id.* Task Force Officer Ferry even told of a specific instance when mobile surveillance ended unsuccessfully. *Id.* at ¶42.

With regard to the pole camera, Task Force Officer Ferry explained the difficulties involved in zooming the camera to identify license plates or individuals. Ferry Aff. ¶45. He also stated that the camera could not pick up conversations. *Id.* With regard to use of a grand jury, he explained that any witness with intimate knowledge of the drug conspiracy would most likely be a member of it, and therefore be uncooperative, or would have a close relationship with the conspirators and would either fear reprisal or notify the conspirators of the ongoing investigation. *Id.* at ¶46. Task Force Officer Ferry also asserted that grand jury subpoenas and the resulting records produced would not identify where the illegal proceeds had been put, the sources of the drug supply, the identity of the other co-conspirators, other methods of money laundering employed, or the organization's financial network. *Id.* at ¶47. Finally, with regard to the use of a trash search, he explained that no successful trash pulls had been conducted because there was too much foot traffic at the distribution residence and because Bivins threw the trash from his residence directly into a compactor. *Id.* at ¶¶48-49.

Despite the foregoing, Defendants argue that Task Force Agent Ferry should have better utilized CS1. They also claim that the Government did not sufficiently explain in the affidavit why more traditional investigative techniques, such as pen registers, trap and trace records, surveillance, a pole camera, and telephone toll records, could not have been utilized instead of a wiretap. The Court finds Defendants' argument to be without merit. The affidavit adequately explains that traditional investigative techniques either netted limited results or were logistically impossible and/or dangerous. The Eleventh Circuit has explained that, even if the Government has actual knowledge of a conspiracy and has collected enough evidence to prosecute one of the many conspirators, "it is unrealistic to require the termination of an investigation before the entire scope of the narcotics distribution network is uncovered and the identity of the participants

learned." *Hyde*, 574 F. 2d at 869.  As Task Force Officer Ferry's affidavit detailed all of the investigative techniques already employed during the investigation and showed that any other technique reasonably appeared to be unlikely to succeed or to be too dangerous, the affidavit met the necessity requirement.   Therefore, the motion to suppress should be denied on this ground, and no evidentiary hearing is necessary.

## RECOMMENDATION

Having carefully considered Defendants' motions and all of the related filings, including the wiretap application and supporting affidavit, and the wiretap order, the Court concludes that Defendants are not entitled to a *Franks* hearing or suppression of the wiretap evidence.  The Court concludes that the affidavit met both the probable cause and necessity requirement for Title III wire interception.   Accordingly, it is respectfully **RECOMMENDED** that the District Court  **DENY** Defendants Williams' and Bartee's Motion to Suppress Wiretap Evidence [DE 708], Defendant Bartee's Motion to Suppress Intercepted Wire Communications, Its Derivative, and Request for Franks Hearing [DE 721], and Defendant Frank Moore's Motion to Suppress Wiretap Evidence [DE 722].  The Court **RECOMMENDS** that the District Court GRANT Defendant Defendant Williams' Motion to Adopt Co-Defendants' Motions [DE 723].  As Defendant Beverly pled guilty to the charges against him on December 2, 2013, the Court **RECOMMENDS** that the District Court **DENY AS MOOT** Defendant Antonio Beverly's Motion to Adopt Co-Defendant's, Eric Williams' and Jerrick Bartee's, Motion to Suppress Wiretap Evidence [DE 719], Defendant, Antonio Beverly's, Motion to Adopt Co-Defendant, Frank Moore's, Motion to Suppress Wiretap Evidence [DE 725], and Defendant, Antonio Beverly's Motion to Adopt Co-Defendant, Jerrick Bartee's, Motion to Suppress Intercepted Wire Communications, Its Derivative, and Request for Franks Hearing [DE 727].

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable U.S. District Judge Kenneth A. Marra, within fourteen (14) days after being served with a copy. 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may bar a later challenge of the factual findings herein. *Heath v. Jones*, 863 F. 2d 815, 822 (11th Cir. 1989).

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 6th day of December, 2013.

_____
WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE